**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **HILLERY L. HARDEMAN and JOYCE HARDEMAN,** | § § § | |
| **Plaintiffs/Counter-Defendants,** | § § § | |
| **v.** | § § | **Civil Action No. 4:22-cv-794-ALM-KPJ** |
| **BANK OF NEW YORK MELLON,** | § § § | |
| **Defendant/Counter-Plaintiff.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Bank of New York Mellon's, fka The Bank of New York, as Trustee for the Certificate-holders of the CWABS, Inc. Asset-Backed Certificates, Series 2006-18, ("Defendant") Rule 12(b)(6) Motion to Dismiss (the "Motion") (Dkt. 22). Plaintiffs Hillery L. Hardeman and Joyce Hardeman ("Plaintiffs") filed a response (the "Response") (Dkt. 23), and Defendant filed a reply (the "Reply") (Dkt. 24). For the reasons that follow, the Court recommends the Motion (Dkt. 22) be **GRANTED**.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs allege that on August 31, 2006, they acquired a property located at 13513 Stanmere Drive, Frisco, Texas 75035 (the "Property") via special warranty deed. Dkt. 20 at 2. Plaintiffs allege that they simultaneously executed two deeds of trust in favor of Mortgage Electronic Registration Systems, Inc., as nominee for America's Wholesale Lender, ("MERS") securing loans in the amount of $320,582 as to the first deed of trust and $80,146 as to the second deed of trust. *Id.* at 2–3. Plaintiffs allege that on January 28, 2013, the deed of trust was assigned to Defendant. *Id.* at 3. Plaintiffs allege this assignment was ineffective because Defendant never

1

received title to the deed of trust. *Id.* Plaintiffs allege that Defendant attempted to cure this defect by filing a "Corrective Assignment of Deed of Trust" but "[t]he purported corrective instrument was void because it failed to comply with the requirements of Texas Property Code, Chapter 5, Subchapter B." *Id.*

Plaintiffs allege that "[i]n 2007 [they] were in a bankruptcy case," wherein claims were filed reflecting an outstanding balance of $320,582, plus $36,206.03 in arrears associated with the first deed of trust and $88,524 associated with the second deed of trust. *Id.* Plaintiffs aver that "[i]n 2010, a modification was executed by Plaintiffs with Bank of America" and the total due after modification was $434,655. *Id.*

Plaintiffs allege that in 2021, they filed for Chapter 7 Bankruptcy in Case No. 21-41400, in the United States Bankruptcy Court for the Eastern District of Texas. *Id.* Plaintiffs aver that "[i]n that case[,] Defendant filed papers stating that the outstanding balance was $434,550.91, as of October 22, 2021."[1] *Id.*

Plaintiffs assert that "[i]n the spring of 2022, Plaintiffs had the [P]roperty on the market, and procured a buyer who would pay approximately $650,000." *Id.* Plaintiffs allege that when the title company contacted Defendant, Defendant represented that "it was owed $630,500 on its lien." *Id.* at 4. Plaintiffs aver that "[t]his rendered Plaintiffs unable to close the transaction." *Id.* Plaintiffs allege that Defendants posted the property for foreclosure sale scheduled for September 6, 2022. *Id.* Plaintiffs allege that they had no prior notice of default served upon them and that "the mortgage note was accelerated more than four years ago." *Id.*

---

[1] The Court takes judicial notice of Bankruptcy Case No. 21-41400. Defendant, through its servicing agent, filed a Motion for Relief from Stay, wherein it represents that the unpaid principal balance was $434,550.91 and that Plaintiffs were in default on 128 contractual payments totaling $341,192.01. *See* Motion for Relief from Automatic Stay of Act Against Property and Waiver of Thirty-Day Hearing Requirement, *In re Hardeman*, No. 21-41400 (Bankr. E.D. Tex. Oct. 22, 2021), Dkt. 13 at 2.

**B.    Procedural History**

On September 2, 2022, Plaintiffs filed the Original Petition (Dkt. 4) in the 429th Judicial District Court of Collin County, Texas (the "State Court"). *See* Dkt. 1 at 1–2. On September 13, 2022, Defendant filed the answer (the "Answer") (Dkt. 5) in the State Court. *See* Dkt. 5 at 1. On September 14, 2022, Defendant removed this case from the State Court to the United States District Court for the Eastern District of Texas. *See* Dkt. 1.

On December 19, 2022, the Court issued an Order and Advisory (Dkt. 19) providing Plaintiffs thirty (30) days to "replead as necessary to comply with the Federal Rules of Civil Procedure and the Court's Local Rules." Dkt. 19 at 1. The Order and Advisory (Dkt. 19) stated that "Defendant's amended answer is due twenty (20) days from receipt of the amended complaint." *Id.* Plaintiffs filed the Amended Complaint (Dkt. 20) on January 6, 2023. *See* Dkt. 20.

On January 17, 2023, Defendant filed the Motion (Dkt. 22), wherein Defendant "moves for a judgment dismissing all causes of action against Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6)." Dkt. 22 at 1. Thereafter, Plaintiffs filed the Response (Dkt. 23), and Defendant filed the Reply (Dkt. 24). *See* Dkts. 23–24.

On May 26, 2023, Plaintiffs, without counsel and on their own behalf, filed a motion, wherein they requested that their counsel, Kenneth Harter ("Mr. Harter"), be removed from representing them in this case (the "Motion for Removal") (Dkt. 26). *See* Dkt. 26 at 1. The Court held a hearing on the Motion for Removal (Dkt. 26) on June 13, 2023. Dkt. 30. Mr. Harter and Defendant's counsel appeared at the hearing; Plaintiffs did not appear. *See id.* Following Plaintiffs nonappearance at the hearing, the Court ordered Mr. Harter to confer with Plaintiffs and file a status report. *See* Dkt. 31 at 2. Following Mr. Harter's status reports, wherein he reported difficulty contacting Plaintiffs, the Court set the Motion for Removal (Dkt. 26) for a second hearing. *See*

Dkts. 32–36. The Court held the second hearing on July 26, 2023. Dkt. 37. Mr. Harter and Plaintiffs appeared at the hearing. *See id.* At the hearing, Mr. Harter represented that he met with Plaintiffs the week before the hearing and discussed whether Plaintiffs wished him to continue representing them in this matter. *See id.* Mr. Harter represented that Plaintiffs informed him that they wished for him to withdraw. *See id.* Plaintiffs confirmed this account and indicated that they were in the process of seeking new counsel. *See id.* Following the hearing, Mr. Harter filed the Motion to Withdraw (Dkt. 38), wherein he represented that "Plaintiffs have advised that they wish to be represented by new counsel and that they want the undersigned to withdraw." Dkt. 38 at 1. On July 27, 2023, the Court granted the Motion to Withdraw (Dkt. 38) and ordered Plaintiffs to advise the Court of their new counsel or their decision to proceed *pro se* by September 26, 2023. Dkt. 39 at 2.

On September 29, 2023, Plaintiffs advised the Court of their new counsel, Anthony Reed ("Mr. Reed"). Dkt. 40. On October 4, 2023, the Court entered an Order (Dkt. 41) allowing Plaintiffs the opportunity to amend the Response (Dkt. 23) to the Motion (Dkt. 22) by October 18, 2023, "[g]iven the purported issues with Plaintiffs' prior counsel." Dkt. 41 at 2. An amended response was not filed. After this Order (Dkt. 41), Joyce Hardeman contacted the Court on two separate occasions regarding the status of the case. Dkt. 43 at 1. Mrs. Hardeman was informed by the Court that no amended response had been filed and was instructed to contact her attorney to discuss the case. *Id.* As a result of these *pro se* contacts with Mrs. Hardeman, the Court ordered Mr. Reed to file a status report on or before January 24, 2024, regarding his representation of Plaintiffs in this matter. *Id.* at 1. On January 24, 2024, Mr. Reed filed the Status Report (Dkt. 44) detailing his representation of Plaintiffs; specifically, Mr. Reed stated that he "conducted not less than 8 phone calls, reviewed all pleadings, deed records, and communicated with Plaintiff via

email on not less than twenty-five occasions between October 6, 2023, and November 3, 2023." Dkt. 44 at 1. Mr. Reed further stated that he told Plaintiffs that "the response filed by prior counsel . . . is sufficient and did not require further amendment at this time." *Id.* At the request of Mr. Reed, the Court held an in-person status conference on February 7, 2024. *See* Dkts. 45 at 2; 46. During the status conference, Mr. Reed reiterated that the response filed by prior counsel was sufficient and did not require amendment at this time. *See* Minute Entry Dated February 7, 2024.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion

to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.    ANALYSIS

### A.    Timeliness of Motion to Dismiss

In the Response (Dkt. 23), Plaintiffs argue that the Motion (Dkt. 22) is untimely because Defendant filed the Answer (Dkt. 5) in the State Court before removing the case to this Court. Dkt. 23 at 3. Thus, Plaintiffs contend that the Motion (Dkt. 22) should be denied because it is "outside the scope of the due order of pleadings." *Id.* In the Reply (Dkt. 24), Defendant argues that the Motion (Dkt. 22) was timely and proper because it was filed within twenty days of the Amended Complaint (Dkt. 20) pursuant to the Order and Advisory (Dkt. 19). Dkt. 24 at 2. Defendant also contends that "[f]ederal courts in Texas generally treat a Rule 12(b)(6) motion filed after a state court answer as a Rule 12(c) motion and both types of motions are decided under the same standard." *Id.*

Under Rule 12, "[a] motion asserting [failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). However, "a defense of failure to state a claim upon which relief can be granted is specifically allowed at different stages of litigation—in a responsive pleading, by motion under Rule 12(c), and at trial." *Harris v. City of Balch Springs*, No. 11-cv-2307, 2012 WL 4512490, at *5 (N.D. Tex. Sept. 30, 2012) (citing FED. R. CIV. P. 12(h)(2)). Therefore, "[i]f a [R]ule 12(b)(6) [motion] is untimely, 'it must be converted into a motion for judgment on the pleadings under Rule 12(c).'" *E.g.*, *DeBeck v. United States*, No. 11-ca-45, 2014 WL 1758979, at *2 (W.D. Tex. Feb. 26, 2014) (quoting *Hernandez v. Harvest Oil & Gas, LLC*, No. 08-383, 2010 WL 3743537, at *2 (S.D. Tex.

Sept. 23, 2010)); *see also* FED. R. CIV. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). In the Fifth Circuit, untimely Rule 12(b)(6) motions are construed as Rule 12(c) motions. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (holding the district court properly construed a Rule 12(b) motion as one for judgment on the pleadings under Rule 12(c)); *Colson & Colson Gen. Contractor, Inc. v. Frosty's Decks & Rails, Inc.*, No. 20-cv-562, 2022 WL 468959, at *5 (E.D. Tex. Jan. 14, 2022) ("Untimely Rule 12(b)(6) motions are treated as Rule 12(c) motions . . . ."), *R. & R. adopted*, 2022 WL 468034 (E.D. Tex. Feb. 15, 2022); *Round Rock Indep. Sch. Dist. V. Amy M.*, 540 F. Supp. 3d 679, 693 (W.D. Tex. 2021) ("Courts consider Rule 12(b)(6) motions to dismiss filed after a responsive pleading, not as a Rule 12(b) motion, but as a Rule 12(c) motion for judgment on the pleadings." (citation omitted)); *Obazee v. Bank of N.Y. Mellon*, No. 15-cv-1082, 2015 WL 4602971, at *1 (N.D. Tex. July 31, 2015) (construing the defendants' Rule 12(b)(6) motion filed after their state-court answer as a motion for judgment on the pleadings under Rule 12(c)).

A post-answer motion to dismiss can be timely so long as the movant raises the defense in the answer. *See Natour v. Bank of Am., N.A.*, No. 21-cv-331, 2021 WL 5239592, at *5 (E.D. Tex. Nov. 10, 2021) (finding a post-answer motion to dismiss timely when the defense of failure to state a claim was raised in the answer); *Harris*, 2012 WL 4512490, at *6 (same). Ultimately, "[w]hether the motion is considered under Rule 12(b)(6) or 12(c) is of no moment, as the standard for deciding a 12(b)(6) motion and 12(c) motion is the same." *Harris*, 2012 WL 4512490, at *6 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2018)).

Here, the Motion (Dkt. 22) was filed after the Answer (Dkt. 5). *See* Dkts. 5; 22. Further, Defendant did not raise the defense of failure to state a claim in the Answer (Dkt. 5). *See* Dkt. 5 at 1–2. But Defendant may assert this defense after the close of pleadings under Rule 12(c).

Accordingly, the Court finds that Plaintiffs' objection that the Motion (Dkt. 22) is untimely is without merit. The Court will construe the Motion (Dkt. 22) as a motion for judgment on the pleadings under Rule 12(c).

**B.    Motion for Judgment on the Pleadings**

Plaintiffs assert four causes of action based upon the facts alleged in the Amended Complaint (Dkt. 20): (1) violation of Chapter 12 of the Texas Civil Practice and Remedies Code, (2) breach of contract, (3) fraud, and (4) suit to quiet title. Dkt. 20 at 4–5.

**1.    Chapter 12 of the Texas Civil Practice and Remedies Code**

"Texas Civil Practice and Remedies Code [§] 12.002(a) prohibits a person from making, presenting, or using a document with knowledge the document is a fraudulent lien against real property." *Lassberg v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, No. 4:13-cv-577, 2015 WL 123756, at *5 (E.D. Tex. Jan. 8, 2015). "To establish a claim under [§] 12.002(a), a plaintiff must show (1) the defendant made, presented, or used a document with knowledge it was a fraudulent lien, (2) the defendant intended that the document be given legal effect, and (3) the defendant intended to cause plaintiff physical injury, financial injury, or mental anguish." *Id.* (first citing *Merritt v. Davis*, 331 S.W.3d 857, 860–61 (Tex. App—Dallas 2011, pet. denied); and then citing *Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x. 323, 326–27 (5th Cir. 2014)). "The party asserting a claim under [§] 12.002 has the burden to prove the requisite elements of the statute." *Id.* (quoting *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.)) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendant's corrective assignment instrument is a fraudulent lien "because it is based on a grossly erroneous determination of the amount due and owing on a lien." Dkt. 20 at 4. Defendant argues that Plaintiff's claim fails as a matter of law because an

assignment is not a lien as defined in § 12.001(3). Under § 12.001(3), a "lien" is defined as "a claim in property for the payment of a debt and includes a security interest." TEX. CIV. PRAC. & REM. CODE § 12.001(3). There currently exists a split in authority within the Fifth Circuit regarding whether an assignment constitutes a lien that can support liability under § 12.002(a). *See Trang v. Bean*, 600 F. App'x 191, 193 n.1 (5th Cir. 2015) (acknowledging, but declining to weigh in on, this split in authority). However, a majority of courts in the Fifth Circuit have held that a document assigning a deed of trust does not qualify as a lien or claim under § 12.002. *See Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 327 n.2 (5th Cir. 2014); *see also Akins v. Wells Fargo Bank, N.A.*, No. 12-cv-41, 2013 WL 4735581, at *3 (E.D. Tex. Sept. 3, 2013) (finding that an assignment of a deed of trust was not a lien or claim against real property as contemplated by § 12.002(a)); *Perdomo v. Fed. Nat'l Mortg. Ass'n*, No. 11-cv-734, 2013 WL 1123629, at *5 (N.D. Tex. Mar. 18, 2013) (same); *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 813 (W.D. Tex. 2012) (same). This Court has previously held that "an assignment, appointment of substitute trustee, and foreclosure notice are not liens as defined under § 12.002." *Moore v. Ameriquest Mortg. Co.*, No. 16-cv-380, 2017 WL 7051073, at *3 (E.D. Tex. Jan. 17, 2017) (citing *Lassberg*, 2015 WL 123756, at *5), *R. & R. adopted*, 2017 WL 603323 (E.D. Tex. Feb. 15, 2017).

The majority of courts interpreting § 12.002(a) have held that, "in order to state a claim, the plaintiff must allege the challenged instrument purported to *create* a lien or claim against real property." *E.g.*, *Akins*, 2013 WL 4735581, at *3 (emphasis in original) (citing *Perdomo*, 2013 WL 1123629, at *5). "A plaintiff fails to state a plausible claim for relief where . . . the challenged instrument merely purports to transfer an existing deed of trust from one entity to another." *Id.* (omission in original) (quoting *Perdomo*, 2013 WL 1123629, at *5) (internal quotation marks omitted). In this case, the assignment at issue did not create a lien or claim against the Property

but only transferred an existing interest from MERS to Defendant. *See* Dkt. 48-3 at 2–3. Because the assignment is not a lien or claim under § 12.002, Plaintiffs' claim fails as a matter of law and should be dismissed. *See Akins*, 2013 WL 4735581, at *3 (dismissing plaintiff's § 12.002(a) fraudulent lien claim where the assignment did not create a lien or claim but only purported to transfer an existing interest from one entity to another); *Perdomo*, 2013 WL 1123629, at *5 (same); *Marsh*, 888 F. Supp. at 813 (same); *Saucedo v. Deutsche Bank Nat'l Tr. Co.*, No. 12-cv-868, 2013 WL 656240, at *5 (W.D. Tex. Feb. 20, 2013) (same).

### 2.    Breach of Contract

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1ˢᵗ Dist.] 2001, no pet.)) (internal quotation marks omitted). In the Motion (Dkt. 22), Defendant does not dispute the first element but asserts that Plaintiffs fail to allege the remaining elements. Dkt. 22 at 3.

Here, Plaintiffs make no allegations regarding the second element. Defendant further argues that Plaintiffs cannot state a claim as to the second element because "Plaintiffs failed to perform or tender performance by fail[ing] to make payments as required under the note and deed of trust." Dkt. 22 at 3. Indeed, "a party that fails to make payments on a mortgage and/or deed of trust loan is in breach and, consequently, is unable to assert a claim for breach of contract." *League v. HSBC Bank USA*, No. 20-cv-352, 2021 WL 1131230, at *3 (E.D. Tex. Feb. 24, 2021) (citing *Smith v. Nat'l City Mortg.*, No. 09-cv-881, 2010 WL 3338537, at *11–*12 (W.D. Tex. Aug. 23,

2010), *R. & R. adopted*, 2010 WL 11652114 (W.D. Tex. Sept. 20, 2010)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014) (holding that dismissal of the plaintiffs' breach of contract claim was proper when the plaintiffs failed to allege they were current on their payments under the deed of trust).

In the Response (Dkt. 23), Plaintiffs argue that "they attempted to pay off the balance of the loan, but that they were unable to close the transaction that would have resulted in a full payment to Defendant because Defendant demanded more money than it was due." Dkt. 23 at 5. Read in the light most favorable to Plaintiffs, they appear to be arguing that they tendered performance by procuring a buyer for the Property. However, Plaintiffs have cited no law to support this contention. Under the note, Plaintiffs made a "promise to pay" by "mak[ing] all payments under this [n]ote in the form of cash, check[,] or money order." Dkt. 48-1 at 2. The deed of trust also required Plaintiffs to make periodic payments as due under the note. *See* Dkt. 48-2 at 3. There is no provision under the note or deed of trust suggesting that Plaintiffs could fulfill their performance obligations by finding a buyer for the Property. Thus, Plaintiffs have not pled that they tendered performance as required by the note.

Plaintiffs further argue that despite their failure to pay, they can maintain a suit for breach of contract for Defendant's breach of their post-default obligations. Dkt. 23 at 5; *see also Barraza v. Bank of Am., N.A.*, No. 12-cv-35, 2012 WL 12886438, at *9 (W.D. Tex. Aug. 13, 2012) ("[N]ot allowing a plaintiff to enforce a defendant's post-default obligations because the plaintiff is in default is 'illogical.'" (citing *Franklin v. BAC Home Loans Servicing, L.P.*, No. 10-cv-1174, 2011 WL 248445, at *2 (N.D. Tex. Jan. 26, 2011))). To allege that Defendant breached its post-default obligations, Plaintiffs must identify the specific provision or provisions of the deed of trust that was breached. *See Williams*, 560 F. App'x at 238 ("[A] claim for breach of a note and deed of trust

11

must identify the specific provision in the contract that was breached." (citing *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011)); *Kovalchuk v. Wilmington Sav. Fund Soc'y FSB*, 528 F. Supp. 3d 647, 665 (E.D. Tex. 2021) (dismissing the plaintiff's breach of contract claim because the plaintiff failed to identify the specific provision or provisions of the dead of trust that were breached by the defendant). Plaintiffs allege that Defendant "breached the contract by insisting on receipt of money not due to it." Dkt. 20 at 5. Plaintiffs have not identified a specific provision in the contract that was breached by this action. In light of *Williams*, Plaintiffs' failure to allege which specific provision of the deed of trust was breached is fatal to their breach of contract claim.

Defendants further argue that "Plaintiffs cannot show any damages from the alleged breach as no foreclosure sale occurred." Dkt. 22 at 3. In the Response (Dkt. 23), Plaintiffs argue that "[d]amages are evident. . . . The loan balances [sic] increases monthly with interest costs and the like; and, Plaintiffs are unable to use whatever equity they[ would] have derived because of Defendant's breach." Dkt. 23 at 5.

"[A] party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural." *Juarez v. Wells Fargo Bank, N.A.*, No. 19-cv-1081, 2020 WL 5709258, at *7 (W.D. Tex. Sept. 23, 2020) (quoting *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 278 (5th Cir. 2009)) (internal quotation marks omitted). In *Juarez*, the plaintiff asserted damages in the form of loss of equity in the home and loss of payments to the defendant. *Id.* at *6. The court found that "[t]hese losses cannot be supported, logically or legally, unless foreclosure has occurred." *Id.* (citations omitted). Other district courts across the Fifth Circuit have similarly found that, in the mortgage context, a plaintiff cannot show damages resulting from the breach of a loan agreement when a foreclosure sale has not occurred. *See Maldonado v. Bank of Am.*, No. 12-cv-

442, 2013 WL 12108679, at *4 (W.D. Tex. June 14, 2013) ("[B]ecause the foreclosure sale has not occurred, plaintiffs cannot establish damages sustained as a result of the alleged breach."); *Lyons v. Wells Fargo Bank, N.A.*, No. 17-cv-1635, 2018 WL 5732084, at *3 (S.D. Tex. July 27, 2018) (recommending dismissal of the plaintiffs' breach of contract claim because the foreclosure sale did not occur and thus, the plaintiff had suffered no damages), *R. & R. adopted*, 2018 WL 3863485 (S.D. Tex. Aug. 13, 2018); *McElroy v. HSBC Bank USA, N.A.*, No. 20-cv-251, 2021 WL 708613, at *10 (E.D. Tex. Feb. 5, 2021) ("Plaintiff has not provided any evidence of damages as foreclosure has not occurred." (citing *Juarez*, 2020 WL 5709258, at *7)), *R. & R. adopted*, 2021 WL 694221 (E.D. Tex. Feb. 23, 2021); *Douglas v. Wells Fargo Bank, N.A.*, No. 19-cv-737, 2020 WL 6588598, at *5 (E.D. Tex. Oct. 21, 2020) (recommending dismissal because the plaintiff's damages were too remote, as no foreclosure sale had occurred), *R. & R. adopted*, 2020 WL 6581863 (E.D. Tex. Nov. 10, 2020).

Here, Plaintiffs cannot show damages of a loss in equity because no foreclosure sale has occurred and Plaintiffs still have possession of the Property. *See generally* Dkt. 20. Further, any increase in the loan balance is due to Plaintiffs' failure to pay the monthly installment as agreed to under the loan agreement; thus, the Court cannot conceive how the increasing balance could be attributable to Defendant. *See* Dkts. 48-1–48-2. Because Plaintiffs have essentially admitted that they breached the contract by not making loan payments as required, have not specifically articulated a provision of the contract that has been breached, and have suffered no damages, the Court recommends that Plaintiffs' breach of contract claim be dismissed.

### 3.    Fraud

"A fraud claim under Texas law is actionable when: (1) a material misrepresentation was made; (2) the representation was false; (3) the falsity of the representation was known to be false

when made or was asserted without knowledge of its truth; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) injury occurred as a result." *Garcia v. Universal Mortg. Corp.*, No. 12-cv-2460, 2013 WL 1858195, at *9 (N.D. Tex. May 3, 2013) (citing *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010)). In the Motion (Dkt. 22), Defendant argues that the economic loss rule bars Plaintiffs' fraud claim. Dkt. 22 at 4.

"Under Texas law, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *Garcia*, 2013 WL 1858195, at *9 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). "Thus, tort damages are generally not recoverable if the defendants' conduct 'would give rise to liability only because it breaches the parties' agreement.'" *Id.* (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "Tort damages are recoverable, however, if the defendants' conduct 'would give rise to liability independent of the fact that a contract exists between the parties.'" *Id.* To determine whether Plaintiffs' fraud claim is barred by the economic loss rule, the Court looks to whether the alleged injury is the subject of the contract itself. *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (citing *Acad. of Skills & Knowledge, Inc. v. Charter Schs., USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App.—Tyler 2008, pet. denied)).

Here, Plaintiffs allege that "Defendant represented to plaintiff[s] that a certain amount was due on their note"; the alleged amount due was a misrepresentation of the amount actually due; "Plaintiffs relied upon the misrepresentation, to their detriment"; and "[a]s a proximate result[,] Plaintiffs were damaged." Dkt. 20 at 5. This is the totality of Plaintiffs' allegations regarding

fraud.[2] In their factual allegations, Plaintiffs allege that in 2021, Defendant filed papers in Plaintiffs' bankruptcy case stating that the outstanding balance was $434,550.91, as of October 22, 2021. *Id.* at 3. Plaintiffs further allege that in the spring of 2022, Defendant represented that it was owed $630,500.00. *Id.* at 3–4. To the best of the Court's knowledge, one or both of these statements constitute the misrepresentation underlying Plaintiffs' fraud claim. Each of these alleged misrepresentations concerns the outstanding balance on the note—an amount necessarily determined by the terms described within the note. If the outstanding balance on the note was incorrectly represented to Plaintiffs, then their recovery would properly be found under the terms of the contract. Thus, any injury to Plaintiffs resulting from the alleged misrepresentations is directly related to the note and arises solely from the contractual relationship between Plaintiffs and Defendant. Moreover, Plaintiffs identify no separate injury for their fraud claim in the Amended Complaint (Dkt. 20). Rather, Plaintiffs' fraud allegations mirror the allegations stated in support of their breach of contract claim; both are based on the allegation that Defendant demanded money not due under the contract. *Compare* Dkt. 20 at 5 ("Defendants [sic] have breached the contract by insisting on receipt of money not due to it."), *with id.* ("Defendant represented to Plaintiff that a certain amount was due on their note. Defendant misrepresented the amount actually due.").

Plaintiffs' argument cannot save their fraud claim; Plaintiffs argue that the economic loss rule does not apply when fraud is alleged and cite to *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) in support of their contention. In

---

[2] The Court notes that Plaintiffs' allegations are vague, leaving the Court to draw reasonable inferences as to which factual allegations relate to Plaintiffs' fraud claim. Despite the vagueness of Plaintiffs' allegation, Defendants make no argument regarding Federal Rule of Civil Procedure 9(b), which contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* FED. R. CIV. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).

*Formosa Plastics*, the Texas Supreme Court held that "tort damages are recoverable for a fraudulent inducement claim" because "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Id.* at 46–47. Plaintiffs do not allege that Defendant's misrepresentations induced Plaintiffs into entering an agreement. Rather, Plaintiffs allege that the misrepresentations concerned the agreement already in place between the parties.

Because Plaintiffs' injury arises under the contract, the economic loss rule bars Plaintiffs' fraud claim. *See Tabor v. Wells Fargo Bank, N.A.*, No. 19-cv-192, 2019 WL 4724033, at *5 (W.D. Tex. Sept. 26, 2019) ) (finding the plaintiff's fraudulent misrepresentation claim was barred by the economic loss rule because the alleged injury was directly related to the parties' loan agreement), *R. & R. adopted*, 2019 WL 13193920 (W.D. Tex. Oct. 28, 2019); *Garcia*, 2013 WL 1858195, at *9 (finding the plaintiffs' fraud claim was barred by the economic loss rule because they did not show that they suffered any loss independent of the mortgage loan contract). Accordingly, the Court recommends that Plaintiffs' fraud claim be dismissed.

### 4.    Quiet Title

"In a suit to quiet title action, a plaintiff must show: '(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.'" *Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 790 (E.D. Tex. 2019) (quoting *Krishnan v. JP Morgan Chase Bank, N.A.*, No. 15-cv-632, 2017 WL 6003105, at *4 (E.D. Tex. Oct. 11, 2017)). "Texas courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'" *Id.* (omissions in original) (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e)). "Furthermore, a plaintiff is required to base his or her claim on the

strength of his or her own title and not the asserted weaknesses of the defendant's title." *Id.* (collecting cases); *see also Warren v. Bank of America, N.A.*, 566 F. App'x 379, 382 (5th Cir. 2014) ("[T]he plaintiff 'must prove and recover on the strength of his own title, not the weakness of his adversary's title.'" (quoting *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.))).

Here, Plaintiffs allege that Defendant claims, and public record reflects, that Defendant holds an interest in the property but "[i]n fact, Defendant owns no valid and enforceable interest in the property." Dkt. 20 at 5. It is unclear from the Amended Complaint (Dkt. 20) upon which facts Plaintiffs rely to support the allegation that Defendant's interest in the property is not valid and enforceable. In the Response (Dkt. 23), Plaintiffs clarify that their suit to quiet title claim is based upon the statute of limitations contained in Texas Civil Practice and Remedies Code § 16.035. Dkt. 23 at 6–7. Plaintiffs argue they allege this in the Amended Complaint (Dkt. 20) because they include the factual allegation that "upon information and belief[,] . . . the mortgage note was accelerated more than four years ago." *See* Dkt. 20 at 4. Plaintiffs argue that "[i]f this is borne out, then [Defendant's] ability to enforce the deed of trust will be terminated" pursuant to § 16.035. Dkt. 23 at 6–7.

Under Texas law, foreclosure actions are subject to a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.035(a) (addressing judicial foreclosures); *id.* § 16.035(b) (addressing nonjudicial foreclosures). "Upon the expiration of the limitations period, the real property lien and the power of sale to enforce the lien become void." *Flanary v. Mortg. Elec. Registration Sys., Inc.*, No. 15-cv-208, 2016 WL 3647983, at *6 (E.D. Tex. June 6, 2016) (citing Tex. Civ. Prac. & Rem. Code § 16.035(d)), *R. & R. adopted*, 2016 WL 3633659 (E.D. Tex. July 7, 2016) "[I]f 'a note or obligation is payable in installments [and] is secured by a real property lien,

the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.'" *Suniverse, LLC v. Ameriquest Mortg. Co.*, No. 18-3320, 2019 WL 291982, at *2 (S.D. Tex. Jan. 23, 2019) (second alteration in original) (quoting *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015)). "If a note or deed of trust secured by real property contains an optional acceleration clause, the start of the four-year window is triggered 'when the holder actually exercises its option to accelerate.'" *Kafi, Inc. v. Wells Fargo Bank, N.A.*, No. 20-cv-354, 2024 WL 23171, at *5 (S.D. Tex. Jan. 2, 2024) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)), *R. & R. adopted*, 2024 WL 580881 (S.D. Tex. Feb. 13, 2024). "Even when a noteholder has exercised its option to accelerate, the holder can abandon acceleration. 'If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration.'" *Id.* (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679 (5th Cir. 2015)).

Defendant argues in the Reply (Dkt. 24) that Plaintiffs do not plead the statute of limitations contained in § 16.035 in the Amended Complaint (Dkt. 20) and, "therefore[,] have not plead[ed] a reason why the Deed of Trust would be invalid or unenforceable." Dkt. 24 at 4. Indeed, Plaintiffs make no reference to § 16.035 or the statute of limitations in the Amended Complaint (Dkt. 20). Nor have Plaintiffs identified an acceleration clause in the note or deed of trust that would trigger the four-year window for the statute of limitations. Plaintiffs only speculate that the mortgage note was accelerated more than four years ago. This speculative allegation fails to state a plausible § 16.035 violation. *See Suniverse*, 2019 WL 291982, at *3 (finding the plaintiff's speculative allegations that the defendant sent a notice of acceleration sometime four years before the foreclosure failed to state a plausible statute of limitation violation); *DTND Sierra Invs. LLC v.*

*Bank of N.Y. Mellon Tr. Co., N.A.*, 958 F. Supp. 2d 738, 749 (W.D. Tex. 2013) (finding the plaintiff's assertion that a notice of acceleration was filed with the real property records more than four years from the date of the foreclosure was insufficient to state a plausible claim to relief); *Johnson v. Citigroup Mortg. Loan Tr. Inc.*, No. 16-cv-1114, 2017 WL 3337268, at *16 (W.D. Tex. Aug. 3, 2017) (finding the plaintiff's assertion that the note was "effectively accelerated" failed to allege facts supporting a § 16.035 claim because "the acceleration only accrued when the defendants actually sent both the notice of intent to accelerate and the notice of acceleration").

Moreover, Plaintiffs do not allege that they timely made payments under the mortgage note, and they do not dispute that they were in default. *See generally* Dkts. 20; 23. Instead of providing that they are current on their mortgage payments, Plaintiffs solely rely on the alleged weakness of Defendant's title to prevail on their claim. *See Sivertson*, 390 F. Supp. 3d at 791 ("Instead of providing that he is current on his mortgage payments, [the plaintiff] solely relies on the alleged weakness of [the defendant's] title to prevail on his claim. [The plaintiff's] claim to quiet title to the Property therefore fails to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and must be dismissed." (internal citations omitted)). Thus, Plaintiffs fail to state a claim upon which relief can be granted, and the Court recommends Plaintiffs' suit to quiet title claim be dismissed.

## C.     Leave to Replead

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving the pleading, or twenty-one days after a responsive pleading or Rule 12(b), (e), or (f) motion is served, whichever is earlier. *See* FED. R. CIV. P. 15(a). In all other cases, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* However, Rule 15(a) instructs the court to "freely give leave

when justice so requires," *id.*, "evinc[ing] a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." (internal citations omitted)).

"Nevertheless, this generous standard is 'tempered by the necessary power of a district court to manage a case.'" *Bell v. Dallas County*, 491 F. App'x 497, 498 (5th Cir. 2012) (per curiam) (quoting *Schiller v. Alpert Grp.*, 342 F.3d 563, 566 (5th Cir. 2003)). "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *See id.* "Futility" means "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (collecting cases). To determine futility, the Court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted).

Here, the prominent considerations are undue delay and futility of amendment. The Motion (Dkt. 22) was filed on January 17, 2023, and has been outstanding for over a year. *See* Dkt. 22. Plaintiffs have caused delay in the Court's ability to rule on the Motion (Dkt. 22) due to their requests to change counsel, continue hearings on the withdrawal of counsel, and two separate

20

attorneys for Plaintiffs being unable to make contact with their clients. *See* Dkts. 26–45. Further, Plaintiffs have amended their complaint once pursuant to the Order and Advisory (Dkt. 19). Plaintiffs were also given leave to amend the Response (Dkt. 23) "[g]iven the purported issues with Plaintiffs' prior counsel." *See* Dkt. 42 at 2. Plaintiffs did not amend the Response (Dkt. 23) and have indicated that they made their best argument therein. *See* Dkt. 44 at 1 (stating that Plaintiffs' counsel informed Plaintiffs that "the response filed by prior counsel . . . is sufficient and did not require further amendment at this time."); Minute Entry dated February 7, 2024 (reiterating that the response filed by prior counsel was sufficient). "[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Bell*, 491 F. App'x at 499 (alteration in original) (quoting *Schiller*, 342 F.3d at 567). Plaintiffs have been given multiple opportunities to make their case but have failed to do so.

Further, as detailed above, Plaintiffs' § 12.002(a), breach of contract, and fraud causes of action fail as a matter of law. *See supra* Sections III.B.1–III.B.3. Accordingly, any amendment by Plaintiffs as to these causes of action would be futile. Thus, the Court recommends that Plaintiffs not be given leave to replead these claims.

However, the suit to quiet title cause of action failed due to Plaintiffs' insufficient factual pleadings. *See supra* Section III.B.4. If given leave to replead, Plaintiffs may be able to allege further facts to state a claim for suit to quiet title on the ground that the foreclosure was barred by the statute of limitations. Thus, the Court recommends that Plaintiffs be given leave to replead their suit to quiet title cause of action.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion (Dkt. 22) be **GRANTED**.

The Court further recommends that Plaintiffs' § 12.002(a), breach of contract, and fraud claims be **DISMISSED WITH PREJUDICE**.

The Court further recommends that Plaintiffs' suit to quiet title cause of action be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiffs be given leave to file an amended complaint on this claim on the asserted ground that the foreclosure was barred by the statute of limitations no later than fourteen (14) days after the entry of the Memorandum Adopting Report and Recommendation, if any. If Plaintiffs fail to timely file an amended complaint, Plaintiffs' suit to title cause of action claim should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 7th day of March, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE